# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**MICHELLE LOUIS,** Individually and
as Personal Representative of
**CHELSEY B. LOUIS,** Deceased,

    Plaintiffs,

v.      No. CIV 96-1161 BB/DJS

**THE UNITED STATES OF AMERICA**,

    Defendant.

_____

Consolidated With

**CONSUELO CARMONA, M.D.,**

    Plaintiff,

v.      No. CIV 97-298 M/JHG

**MICHELLE LOUIS**, Individually
and as Personal Representative
of **CHELSEY B. LOUIS**, Deceased;
and **THE UNITED STATES OF AMERICA**,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's motion to dismiss or in the alternative to render summary judgment on the grounds that Plaintiff may not seek recovery beyond the New Mexico statutory limitations on medical malpractice recoveries. Having reviewed the briefs of counsel and being otherwise duly advised, the Court finds Defendant's motion should be GRANTED.[1]

---

[1] This Court has determined that oral argument would not be of material assistance in the determination of this matter and Plaintiff's Request for Oral Argument will be DENIED.

**Facts and Procedural History**

In addressing the motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court is required to accept as true all well-pleaded facts alleged in Plaintiff's complaint. See Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1266 (10th Cir. 1989). The Acoma-Canoncito-Laguna Indian Hospital ("ACLIH") is operated by the United States and is located in San Fidel, New Mexico.[2] During the course of her pregnancy, Plaintiff, Michelle Louis, sought and received medical care at the ACLIH.[3] Plaintiff gave birth to Chelsey Louis on November 13, 1994. Plaintiff maintains federal employees at ACLIH were negligent in their diagnosis and medical care during her pregnancy, and as a result Chelsey Louis died of an overwhelming infection on November 18, 1994.

Claiming jurisdiction pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq, Plaintiff filed suit in this Court seeking damages against the United States for medical negligence committed upon Michelle Louis and medical negligence resulting in the wrongful death of Chelsey Louis.[4]

---

[2] From the pleadings, it is not completely clear if the ACL Hospital is also located within the boundaries of Acoma Pueblo. Plaintiff alleges in her first amended complaint that the ACL Hospital is located on the Acoma Pueblo. Defendant's response agrees that the hospital is located in San Fidel, but does not admit it is located on the Acoma Pueblo. (CIV 96-1161 Doc. 58, 63).

[3] On November 3, 1994, Michelle Louis, who was late in her pregnancy, arrived at the ACL Hospital with a chief complaint of a "gush of water", and continued leakage of fluid from her vagina that morning. She was subsequently released and readmitted the following day. The next visit to the hospital was on November 8, 1994, at which time she was checked out and told to return on November 15, 1994. On November 13, 1994, Michelle Louis was admitted to Presbyterian Hospital where her daughter, Chelsey B. Louis was delivered.

[4] Plaintiff's amended complaint adds Dr. Consuelo Carmona as a defendant in the pending case. As of the date of this order, this Court reserves ruling on Dr. Carmona's Complaint for Declaratory Judgment on her alleged status as a federal employee for purposes of the FTCA.

Defendant moves to dismiss the portion of Plaintiff's action which seeks to recover more than the New Mexico statutory limitation on medical malpractice recoveries because i) the Court does not have subject matter jurisdiction to enter such an award, and ii) the complaint, to the extent Plaintiff seeks recovery beyond the New Mexico statutory limitation, fails to state a claim upon which relief can be granted. (CIV 96-1161 Doc. 109).

**Discussion**

A.  Law of the Place

Under the doctrine of sovereign immunity, "the United States, as sovereign, is immune from suit save as it consents to be sued,...and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." Weaver v. United States, 98 F.3d 518, 520 (10th Cir. 1996) (quoting United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769-70, 85 L.Ed. 1058 (1941)). The threshold question in any suit in which the United States is a defendant, then, must be whether Congress has specifically waived sovereign immunity. Taylor v. United States, 590 F.2d 263 (8th Cir. 1979). Plaintiff's recovery is limited by the express terms of the governments waiver of its sovereign immunity. The FTCA sets the parameters of the government's liability in this case. See United States v. Orleans, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d. 390 (1976). According to the FTCA, the United States shall be liable, "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Under the FTCA then, this Court has exclusive jurisdiction of civil actions on claims against the United States, where the United States, "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). In other words, the applicable law in an FTCA claim is determined by the "law of the place" of the

alleged occurrences that give rise to the suit. Because this case involves an Indian Plaintiff whose injuries occurred on a federal facility within both the State of New Mexico, and within "Indian Country", unique questions are raised about "the law of the place" as defined by the FTCA.

Should this matter go to trial, Defendant's motion petitions for the enforcement of a cap on medical malpractice liability as provided in the New Mexico Medical Malpractice Act (NMMMA), N.M. Stat. Ann. §§ 41-5-1 to 41-5-29 (Michie 1978). Plaintiff responds by arguing that because the alleged acts of negligence occurred at the ACLIH located within the Acoma Pueblo, New Mexico's substantive law does not apply. (CIV 96-1161 Doc. 111). Instead, Plaintiff asks this Court to apply tribal law which has no cap on medical liability. Stated another way, Plaintiff believes § 1346(b)'s language should be read to apply the law of Acoma Pueblo and not New Mexico law as the "law of the place where the act or omission occurred."(CIV 96-1161 Doc. 111).

It has often been assumed without discussion by the courts that, in cases that arise on an Indian reservation within a State, the substantive law of the State is controlling in such situations. See Hatahley v. United States, 351 U.S. 173, 180 (1956)(applying Utah law to a claim by Navajo Indians for Government destruction of their horses); Red Elk v. United States 62 F.3d 1102 (8th Cir. 1995)(applying South Dakota law to decide the course and scope of employment of a tribal law enforcement officer); Red Lake Band of Chippewa Indians v. United States, 936 F.2d 1320 (D.C. Cir. 1991) (applying Minnesota law in a suit against the government for failure to contain an uprising on the Red Lake Reservation); Seyler v. United States, 832 F.2d 120 (9th Cir. 1987) (applying Idaho recreational use statute to an accident that occurred on a road maintained by the BIA); Big Head v. United States, 166 F.Supp. 510, 513 (D.Mont. 1958)(FTCA action alleging

4

governmental negligence in maintaining reservation road applying Montana law); cf . Bird v. United States, 949 F.2d 1079 (10th Cir. 1991)(applying Oklahoma law to malpractice claim occurring in Tahlequah Oklahoma). On the other hand, Plaintiff does not offer any supporting authority for the proposition that tribal law should be applied as "law of the place" under the FTCA.[5] Accordingly, New Mexico law, as applied to private parties in like circumstances, determines the scope of the government's liability in this type of case.

---

[5]The lack of supporting authority on this issue is not surprising. A reading of Chief Judge Paul G. Hatfield's opinion in Azure v. United States, CV-90-68-GF, District Of Montana, Great Falls Division (Memorandum and Order), illustrates the difficulties inherent in the legal argument Plaintiff presents. Implicit in Plaintiff's argument is the assumption that the United States, viewed as a private person, would be compelled to submit to the civil jurisdiction of the Acoma tribe to determine the extent of its liability for negligent acts against a tribal member. Such an analysis would require legal and factual elements that have not been presently made available to this Court. First, the status, in terms of ownership of the property where the alleged act or omission occurred has not been defined. It is not clear for example, whether the hospital is on fee land, federally reserved land, or land leased from the tribe. Such considerations have been held significant in determining a tribe's authority over private, non-Indian individuals. See Strate v. A-1 Contractors, 520 U.S. 438, 454 (1997)(right-of-way state acquired for a highway, that ran through reservation land, renders the highway, for nonmember governance purposes, to alienanted, non-Indian land); see also Montana v. United States, 450 U.S. 544, 565 (1981)("To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands."); cf. Ariz. Pub. Serv. Co., v. Aspaas, 77 F3d 1128 (9th Cir. 1995)(non-Indian lessee of offices on tribal trust land; court avoided decision as to Tribe's regulatory authority). Another problem with adopting Plaintiff's views concerning the "law of the place" is that it would subject the United States to varying and often unpredictable degrees of liability, depending on the reservation that was the site of the occurrence. In the District of New Mexico alone, for example, there are great differences between the many tribes and their approaches to legal issues. In some instances, the difficulty in proving the existence and substance of any tribal law on the subject of the tort would be considerable. The Court does not believe Congress intended such a result when adopting the FTCA, as it strictly limits the parameters of a tort suit brought against the federal government. See Louis v. United States, 967 F.Supp. 456, 460 (D.N.M. 1997). Any expansion of § 1346(b) is better left to Congress.

B.  Conflict of Law

Plaintiff's next response to Defendant's motion argues that, should the Court find that New Mexico law applies in this action, the state's choice of law principles still require the application of Acoma law. A complete reading of the FTCA requires application of the whole law of the state where the act or omission occurred, including the appropriate conflict of laws doctrine. Richards v. United States, 369 U.S. 1, 9-13, 82 S.Ct. 585,591-93, 7 L.Ed.2d 492 (1962). However, Plaintiff's conclusion that Acoma law is the applicable law in this case is based on a incorrect interpretation of New Mexico law.

In resolving conflicts of law, New Mexico follows the doctrine of lex loci delicti and applies the law of the state in which the wrongful conduct occurred, First National Bank in Albuquerque v. Benson, 553 P.2d 1288 (N.M. App. 1976). This rule is followed, unless its application would violate New Mexico public policy. Torres v. State, 894 P.2d 386 (N.M. 1995). Put another way, the rule requires application of "the law of the place where the crime or wrong took place." Estate of Gilmore v. Gilmore, 946 P.2d 1130, 1133 (N.M. App. 1997). In Gilmore, the New Mexico Court of Appeals clarified the place-of -the-wrong rule:

> "We perceive New Mexico conflict-of-law doctrine as reflecting a desire for the greater certainty presumably provided by more traditional approaches to conflict-of laws problems, tempered by recognition that important policy considerations cannot be ignored. (citation omitted). Therefore, we begin with a strong presumption in favor of application of the place-of-the wrong rule, but we will not close our eyes to compelling policy arguments for departure from the general rule in specific circumstances.
> Estate of Gilmore at 1136.

Employing this approach to the present case, also results in the application of New Mexico law.  The allegedly negligent act(s) against Plaintiff occurred at a federally operated

6

hospital located in San Fidel, New Mexico and presumably within "Indian Country." However, the result of the alleged negligent act(s) was manifested two days later when Chelsey B. Louis died of her injuries at Presbyterian Hospital in Albuquerque. Certainly Acoma Pueblo has an interest in this case as Plaintiff is a member of the tribe. It is important to remember however, that the Plaintiff is also a citizen of the State of New Mexico, which has an equally strong interest in protecting its residents, whether or not they live on tribal land. Wacondo v. Concha, 873 P.2d 276 (N.M. App. 1994). According to the New Mexico legislature, the purpose of the Medical Malpractice Act is, "to promote the health and welfare of the people of New Mexico by making available professional liability insurance for heath care providers in New Mexico." N.M. Stat. Ann. § 41-5-2 (Michie 1978). Defendants provide medical services to the citizens of New Mexico and therefore New Mexico has a particular interest in their professional liability. See generally, Ruth L. Kovnat, Medical Malpractice Legislation in New Mexico, 7 N.M.L. Rev. 5 (1976-77)(history and policy considerations of the Medical Malpractice Act in New Mexico). Application of the place-of-the-wrong doctrine, along with the policy arguments supporting the Medical Malpractice Act, require the application of New Mexico law in this tort action. Estate of Gilmore v. Gilmore, 946 P.2d 1130, 1136 (N.M. App. 1997).

C.        Application of the NMMMA Damages Cap to the United States in this FTCA Action

The final issue involves the applicability of the state law cap on damages to the United States in this FTCA action. (CIV 96-1161 Doc. 112). Plaintiff takes the position that the United States, according to state law, does not comply with the NMMMA, and thus does not qualify for its benefits. Plaintiff cites a New Mexico Supreme Court case, Roberts v. Southwest Community Health Services, 837 P.2d 442 (N.M. 1992), which held that benefits of the NMMMA do not

7

apply to those health care providers that have not qualified under the Act. Plaintiff's error, explained in several Circuit Court decisions, is that state law is not relevant to an analysis of the federal government's liability in an FTCA suit. Reilly v. U.S., 863 F.2d 149, 162 (1st Cir. 1988). Local law, it has been decided, "informs how a private party would be treated; it does not tell us, indeed it cannot, the extent to which the federal government has waived its sovereign immunity." Id. (quoting Lucas v. United States, 807 F.2d 414 (5th Cir. 1986)); see also, Starns v. United States, 923 F.2d 34 (4th Cir. 1991). Given the proper analytical construct, then, this point must be resolved in favor of Defendant.

Federal Courts have generally recognized that since the FTCA is in derogation of the common law it should be strictly interpreted to limit governmental liability. Honda v. Clark, 386 U.S. 484 (1967); Dry Creek Lodge, Inc., v. United States, 515 F.2d 926 (10th Cir. 1975); cf. Mann v. United States, 399 F.2d 672, 673 (9th Cir. 1968)(Plaintiff's tribal status could not avoid this rule of construction). Recognizing Congressional intent to permit only limited federal liability, the present Chief Judge of this District has repeatedly held that the New Mexico cap applies to malpractice claims against the Government. See Vincoy v. United States, CIV 97-0296 JC/LFG (Memorandum Opinion and Order, D.N.M. June 1, 1998); Garcia v. United States, CIV 93-0538 (Memorandum Opinion and Order, D.N.M. May 18, 1994); Lee v. United States, CIV 92-1327 (Order, D.N.M. Mar. 29, 1995). In Vincoy, Chief Judge Conway ruled that, although the United States had not actually complied with the specific requirements of the NMMMA, it had met the functional equivalent of the Act's requirements. Circuit court decisions have also upheld the right of the United States to invoke statutory liability caps where they did not otherwise comply with the statutory requirements which provide the cap. See

Nationwide Mut. Ins. Co., 3 F.3d at 1397 (finding that the United States functionally complied with the objectives of a Colorado auto insurance statute); Lozada v. United States, 974 F. 2d 2156 (8th Cir. 1992) (ruling that the United States, when sued under the FTCA is entitled to the medical malpractice cap under Nebraska law); Carter v. United States, 982 F.2d 1141 (7th Cir. 1992) (holding that limitation on private liability under Indiana law applies to the United States). Therefore, the limitation of damages provision contained in the NMMMA applies to FTCA claims for medical malpractice against the United States. Vincoy at 3.

## **ORDER**

For the reasons stated above, this Court finds that according to federal law the United States is in 'like circumstances' to a private tortfeasor that has qualified under the NMMMA.

IT IS HEREBY ORDERED that the Defendant's Motion for Partial Summary Judgment (CIV 96-1161 Doc. 109) be, and hereby is, GRANTED. Plaintiff's recovery under the FTCA, if any, shall be limited to the sum allowed by New Mexico Law.

Dated at Albuquerque this 26th day of January, 1999.

BRUCE D. BLACK
United States District Judge

Counsel for the United States
Marilyn S. Hutton
U.S. Attorney's Office
P.O. Box 607
Albuquerque, New Mexico 87103

Counsel for Michele K. Louis, individually
and as Personal Representative of the Estate of
Chelsey B. Louis, Deceased
Randi McGinn
420 Central S.W.- Suite 200
Albuquerque, New Mexico 87102

Attorneys for Consuelo Carmona, M.D.
Gregory W. Chase
Robin A. Goble
Miller, Stratvert & Torgerson, P.A.
P.O. Box 25687
Albuquerque, New Mexico 87125