# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**MICHELLE LOUIS,** Individually and
as Personal Representative of
**CHELSEY B. LOUIS,** Deceased,

    Plaintiffs,

v.    No. CIV 96-1161 BB/DJS

**THE UNITED STATES OF AMERICA**;
**CONSUELO CARMONA, M.D.,**
Individually; and **DR. L.P. HAN,**
Individually,

    Defendants.

Consolidated With

**CONSUELO CARMONA, M.D.,**

    Plaintiff,

v.    No. CIV 97-298 M/JHG

**MICHELLE LOUIS**, Individually
and as Personal Representative
of **CHELSEY B. LOUIS**, Deceased;
and **THE UNITED STATES OF AMERICA**,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Consuelo Carmona, M.D.'s October 7, 1998 Motion for Summary Judgment (Doc. 123) against the United States; Consuelo Carmona M.D.'s October 9, 1998 Motion for Summary Judgment (Doc. 132) against Michelle Louis, and the United States' October 7, 1998 Cross Motion for Summary Judgment (Doc. 125) against Consuelo Carmona, M.D. Having reviewed the briefs of counsel and being otherwise duly

advised, the Court finds that Dr. Carmona's Summary Judgment Motion against the United States will be DENIED, the United States' Cross-Motion for Summary Judgment will be GRANTED, and Dr. Carmona's Summary Judgment Motion against Michelle Louis will be DENIED IN PART.[1]

I.  **Facts and Procedural History**

Claiming jurisdiction pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq, Plaintiff filed suit in this Court seeking damages against the United States for medical negligence committed upon Michelle Louis and medical negligence resulting in the wrongful death of Chelsey Louis. On November 12, 1997, Ms. Louis filed a Motion to Amend Complaint, adding Dr. Carmona as a defendant in Louis v. United States, et al., No. CIV 96-1161. (Doc. 58). Michelle Louis also has an case pending, filed October 18, 1996, against Dr. Carmona in The Acoma Pueblo Tribal Court based on the same alleged medical negligence claims she is currently pursuing in Louis v. United States, et al., No. CIV 96-1161.

In a separate action, Dr. Carmona filed a Complaint of Declaratory Judgment on March 6, 1997.[2] In her Amended Complaint, Dr. Carmona petitions the Court to enter judgment declaring that she was acting on behalf of the federal government for the purposes of the Federal Tort Claims Act (FTCA) and 28 U.S.C. § 1346(b)(1) in providing care to Plaintiff Michelle Louis and therefore is entitled to all procedural and substantive rights and immunities provided to federal

---

[1] The Court will reserve ruling on the remainder of Dr. Carmona's Summary Judgment motion regarding Acoma Tribal Court jurisdiction as that analysis involves separate factual and legal issues.

[2] That case, Civ. 97-298 M/JHG, was consolidated with Civ. 96-1161 in April 1997. (Doc. 25).

2

employees under that statute. In addition, or in the alternative to the relief requested, Dr. Carmona requests that the Court enter judgment declaring that the Acoma Pueblo Tribal Court does not have civil jurisdiction over Dr. Carmona, and directing Ms. Louis to dismiss her Tribal Court claim against Dr. Carmona. (Doc. 139). The declaratory judgment actions are the subject of the three summary judgment motions currently before the Court.

The motions and cross motion for summary judgment have created an interesting alliance. Plaintiff Louis has joined Defendant United States in the cross motion to dismiss.[3] Ms. Louis and the United States' arguments are substantially similar, and their goal the same; to have the Court declare that Consuelo Carmona does not qualify as a federal employee and is not entitled to the benefits and immunities of the FTCA.

The relevant facts before the Court as to the type of employment relationship that existed between the parties are as follows. At the time the alleged incidents took place, Dr. Carmona was board certified in Obstetrics and Gynecology, with a practice in Albuquerque. She was employed by Albuquerque Women's Specialists, now known as Women's Specialists of New Mexico. Dr. Carmona would visit Acoma Canoncito Laguna Hospital (ACLH) approximately once a month to provide prenatal care to needy patients. Dr. Carmona met with Ms. Louis at the ACL Hospital on October 4, 1994, and performed a pre-delivery evaluation on Ms. Louis. The ACL Hospital was situated on land leased by Acoma Pueblo to the federal government for use as an Indian Health Service Facility. Dr. Carmona saw patients at ACL Hospital on a referral basis, and the patients, who often traveled to Albuquerque for care, were billed for obstetrical services if they had

---

[3] On October 14, 1998 Ms. Louis filed a motion concurring with the United States Cross-Motion For Summary Judgment. (Doc. 138).

insurance, Medicaid, or Medicare. No formal written employment agreement documenting the relationship between Dr. Carmona and the Hospital or IHS has been located. The Hospital required Dr. Carmona to follow regulations but did not mandate she keep a fixed patient schedule and provided little administrative support in handling her patient load. Although she saw patients on a referral basis, she was not a salaried federal employee, nor did she receive employment benefits from the government for the work she did at the Hospital. Finally, Dr. Carmona maintained her own malpractice insurance through her private practice.

II. **Summary Judgment Standard**

Summary judgment is appropriate only "if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Federal Rules of Procedure state that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 321-323 (1986). Once the movant meets its burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In reviewing a summary judgment motion, the evidence must be viewed in the light most favorable to the nonmoving party. Frandsen v. Westinghouse Corp., 46 F.3d 975, 977 (10th Cir. 1995).

III. **Analysis**

By now, the parties in this suit are well aware of the limitations the FTCA places on lawsuits brought against the federal government. However, one concept worth repeating is that under the doctrine of sovereign immunity, "the United States, as sovereign, is immune from suit save as it consents to be sued,...and the terms of its consent to be sued in any court define that

court's jurisdiction to entertain the suit." Weaver v. United States, 98 F.3d 518, 520 (10th Cir. 1996) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). The threshold question in any suit in which the United States is a defendant, then, must be whether Congress has specifically waived sovereign immunity. Taylor v. United States, 590 F.2d 263 (8th Cir. 1979). Plaintiff's recovery is limited by the express terms of the government's waiver of its sovereign immunity. The FTCA sets the parameters of the government's liability in this case, United States v. Orleans, 425 U.S. 807 (1976), and any waiver of sovereign immunity is to be strictly construed. Dry Creek Lodge, Inc. v. United States, 515 F.2d 926 (10th Cir. 1975).

The language of 28 U.S.C. § 1346 (b) confers a waiver of the sovereign's liability for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment,...." However, the FTCA has a specific exclusion for acts of independent contractors. 28 U.S.C. 1346, 2671. In Orleans, the Supreme Court addressed the Federal Government's liability under the FTCA for certain torts of government contractors, stating that the FTCA "was never intended and has not been construed by this Court, to reach employees or agents of all federally funded programs that confer benefits on people." Id. at 813. This motion, then, turns on whether Dr. Carmona was a government employee or an independent contractor when she provided health care services to Michelle Louis. This question is to be resolved by federal law. See Logue v. United States, 412 U.S. 521, 528 (1973).

In Logue and Orleans the Supreme Court established the test to distinguish between an independent contractor and a government employee. According to these cases, the critical factor in this determination is the power of the federal government "to control the detailed physical

5

performance of the contractor." Logue at 428. Orleans and Logue involved circumstances quite different from the present case, but the Tenth Circuit has had the opportunity to apply this principle to malpractice claims in Lurch v. United States, 719 F.2d 333 (10th Cir. 1983), cert denied, 466 U.S. 927 (1984) and Lilly v. Fieldstone, 876 F.2d 857 (10th Cir. 1989). In our circuit, "the key inquiry under this control test is whether the Government supervises the day-to-day operations of the individual." Lurch, 719 F.2d at 337. According to Tenth Circuit law, the factors guiding the Court's consideration are:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result (3) whether the person uses her own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts and (7) whether the individual has authority to subcontract to others.

Lilly v. Fieldstone 876 F.2d at 859 (citing Norton v. Murphy 661 F.2d 882 (10th Cir. 1981).

Under a review of all the facts presented, viewing them in the light most favorable to Dr. Carmona, the Court cannot find that Dr. Carmona is a government employee entitled to FTCA protections. As an initial consideration, Dr. Carmona has not produced any written agreement between herself and the United States expressing intent by either party to create an employee - employer relationship. Given the absence of such an agreement, the facts presented by the parties and Dr. Carmona's own admissions in her deposition taken January 15, 1998 (Doc. 125 Ex. A) must be examined to clarify the parties' intent as to their employment relationship. Id. When Dr. Carmona began her visits to the ACL Hospital, she and the Hospital had no formal arrangement on such issues as how many patients she would see and when she would see them. Neither could Dr. Carmona produce any agreement between herself and the IHS or Health and Human Services. On the days she visited the Hospital, usually in half-day sessions, Dr. Carmona would bring her

own nurse and would have a schedule of patients to see that day. Although the Hospital referred patients to her, the ACLH did not have a mandatory patient load.

Dr. Carmona did receive "courtesy privileges" at the Hospital after two years, but they did little to change the relationship between the parties. While conserving her "courtesy privileges" at the Hospital, Dr. Carmona maintained her private practice in an office in Albuquerque. There, she kept copies of her ACLH patients' records and billed her patients if they had insurance, medicaid, or medicare. Although the Hospital provided her a place to see her patients, there are no facts before the Court indicating the Hospital provided her any of the administrative support that would be expected from an employer.

Dr. Carmona argues that because the Hospital reviewed her credentials, required that she conform to administrative requirements of filling out charts, reviewed her charts, and precluded her from admitting patients on her own, the United States controlled many aspects of the manner and method of her performance. Despite this claim, "being subject to hospital's rules as a condition of staff privileges does not remotely make a private physician an employee of that hospital." Lilly 876 F.2d at 860. From the record, on facts important to this analysis, Dr. Carmona appears to have had control over the treatment she provided, including the medications she could prescribe, as long as they were on the ACLH's formulary. Further, the deposition testimony of Dr. Carmona reveals that the ACL Hospital did not compensate her in any fashion including payment of Social Security taxes or health insurance. Finally, she was not provided malpractice insurance by the Federal Government but instead maintained her own through her private practice. The "control" determination is difficult to make, especially considering the lack of agreements between the two parties. However, on balance viewing the factors described in

Logue, Lurch and Lilly, the Court cannot find that the United States "controlled" Dr. Carmona enough to render her a government employee. Id. Instead the Court determines there is no genuine issue of material fact on that issue, and that Dr. Carmona was at most an independent contractor.

Dr. Carmona alternatively contends that even though the Court might not find that she is an "employee" of the federal government, she should be found to be acting "on behalf of a federal agency." (Doc. 124 at 10). Dr. Carmona argues that the FTCA broadly defines the term employee to include "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." This expansive reading of § 2671 was discouraged by the Logue Court, which stated,

> [W]e are not persuaded that employees of a contractor with the Government, whose physical performance is not subject to governmental supervision, are to be treated as "acting on behalf of a federal agency" simply because they are performing tasks that would otherwise be performed by salaried employees.

Logue, 412 U.S. at 531-32. Further, if the Court were to accept Dr. Carmona's reading of the statute, the independent contractor exclusion would be nearly eradicated. There would be rare circumstances in which, "an independent contractor with the Government would be performing tasks that would not otherwise be performed by salaried Government employees." Id. Finally, the Second Circuit, presented with a similar argument has ruled that the disputed clause is, "designed to cover special situations such as government officials who serve without pay, or an employee of one government agency who is loaned to and works under the direct supervision of another government agency." Leone v. U.S., 910 F.2d 46, 51 (2nd Cir. 1990) (citing Logue, 412 U.S. at 531). Therefore, the Court refuses to

8

accept Dr. Carmona's contention that she was a "person acting on behalf of a federal agency" for purposes of § 2671.

Congress has enacted statutes expanding the FTCA waiver of sovereign immunity by allowing non-Service health care providers, working with certain agencies, to be protected by the FTCA. See 25 U.S.C.A. § 1638c (Supp. Pamp. 1998); 25 U.S.C.A. 1680c(d) (Supp. Pamp. 1998). Dr. Carmona seeks refuge in these statutes by arguing that they define her as a government employee. Dr. Carmona first cites 25 U.S.C. § 1638c(d). This statute provides protection by the FTCA for individuals that provide health care services pursuant to a "personal service contract" with the Secretary of Health and Human Services (HHS).[4] However, the Court is not aware that any "personal service contract" exists between Dr. Carmona and the Secretary of Health and Human Services. 48 C.F.R. Ch. 1 FAR 37.101 (1998) ("Personal services contract means a contract that, by its express terms or as administered, makes the contractor personnel appear, in effect, Government employees (see 37.104)"). As indicated by HHS regulations, "the paramount consideration in determining if an employer-employee relationship exists is the presence of direction or supervision by Government personnel of contractor employees,...." 48 C.F.R. Ch. 3 FAR 337.104 (1997). The degree of supervision necessary to establish this relationship is, "relatively continuous, close supervision. Sporadic supervision is not sufficient to constitute an

---

[4] Relevant portions of § 1638c include:
(a) The Secretary may enter into personal services contracts with entities, either individuals or organizations, for the provision of services in facilities owned, operated or constructed under the jurisdiction of the Indian Health Service.
...
...
(d) Individuals providing health care services pursuant to these contracts are covered by the Federal Tort Claims Act.

9

employer - employee relationship." Id.  Relying on the control analysis outlined in Lilly, the Court, cannot find that the relationship between Dr. Carmona and the United States meets this requirement.

Next, Dr. Carmona cites a federal statute that addresses the extension of hospital privileges to non-Service health care practitioners. 25 U.S.C.A. 1680c(d) (Supp. Pamp. 1998). Specifically, the statute provides that hospital privileges, in IHS facilities or facilities operated under contract pursuant to the Indian Self-Determination Act, may be extended to non-Service health care practitioners who provide care to patients that were previously ineligible under the statute to receive such care. Id.  However, under the provision Dr. Carmona relies on, protection under the FTCA is not extended to those non-Service practitioners whose acts or omissions occurred in the course of treating ineligible patients. Id. Dr. Carmona argues that limiting FTCA protection only to conduct associated with caring for eligible Indian patients is, "consistent with Congress' agenda of encouraging non-Service physician participation in the Indian health care system..." (Doc. 124 at 15). That may be true, but the language does little to educate the Court on the fundamental issue of this motion which is how to distinguish between a government employee and a contractor.  Instead, the statutory language simply excludes from FTCA protection non-Service health care providers who commit a tort during the treatment of ineligible persons. The statute does not establish the converse – that non-Service health care providers treating eligible patients are automatically covered by the FTCA. Instead, by specifically stating that such health care providers "may" be considered employee for FTCA purposes, Congress exhibited its intent to allow FTCA coverage to occur, provided other statutory or regulatory requirements have been met.

At times, Dr. Carmona's arguments rely on statutes and federal regulations pertaining to Self-determination contracts under the Indian Self Determination and Education Assistance Act, 25 U.S.C. § 450 et seq (Supp. Pamp. 1998); 25 C.F.R. Ch. V. § 900.199 (1998). Dr. Carmona presents these arguments without offering any evidence that the Acoma Laguna Indian Hospital is a contractor health care facility operated under a self-determination contract.[5] 25 U.S.C.A. § 450f(d). In fact, it is the Court's understanding that the ACL Hospital is a federally operated IHS facility, making Dr. Carmona's appeal to that statute unpersuasive.

The Court has given due consideration to the regulations cited by Dr. Carmona and understands their role in providing non-Service health care to Indian communities. Dr. Carmona makes a logical and vigorous plea to the Court that the underlying policies of federal Indian health care legislation mandate FTCA coverage to Dr. Carmona for her association with the IHS. However, the Court feels constrained to make a final determination on the parties' employment relationship based on the principles outlined by the Supreme Court in Orleans, Logue and the two more recent Tenth Circuit opinions, Lurch and Lilly. Given the facts of this case, specifically the relationship between Dr. Carmona and the ACL Hospital, a federally operated IHS institution, Dr. Carmona does not come under the definition of a government employee so the United States cannot be held liable for any alleged negligence.

---

[5] The Code of Federal Regulation covering contracts under the Indian Self-Determination and Education Assistance Act define the following:
Contract means a self-determination contract as defined in section 4(j) of the Act.
Contractor means an Indian tribe or tribal organization to which a contract has been awarded.
25 C.F.R. § 900.6 (1998)

**ORDER**

For the reasons stated above, this Court finds that according to federal law Dr. Carmona is not a federal employee and therefore is not entitled to the rights and immunities provided under the Federal Tort Claims Act. The Court having read all the briefs and being otherwise duly advised, will withhold judgment as to whether the Acoma Tribal Court has proper jurisdiction over Michelle Louis' malpractice claim against Dr. Carmona.

IT IS HEREBY ORDERED that Consuelo Carmona, M.D.'s Motion for Summary Judgment (Doc. 123) against the United States is DENIED; Consuelo Carmona M.D.'s Motion for Summary Judgment (Doc. 132) against Michelle Louis is DENIED IN PART, and the United States' October 7, 1998 Cross Motion for Summary Judgment (Doc. 125) against Consuelo Carmona, M.D. is GRANTED. IT IS FURTHER ORDERED that Dr. Carmona's Amended Complaint for Declaratory Judgment (Doc. 139) will be DISMISSED against the United States. Dr. Carmona's Amended Complaint for Declaratory Judgment against Michelle Louis will be DISMISSED IN PART and she will proceed as an individual defendant in Louis v. United States, et al., No. CIV 96-1161.

Dated at Albuquerque this 18th day of March, 1999.

_____
BRUCE D. BLACK
United States District Judge

Counsel for the United States
Marilyn S. Hutton
U.S. Attorney's Office
P.O. Box 607
Albuquerque, New Mexico 87103

Counsel for Michele K. Louis, individually
and as Personal Representative of the Estate of
Chelsey B. Louis, Deceased
Randi McGinn
420 Central S.W.- Suite 200
Albuquerque, New Mexico 87102

Attorneys for Consuelo Carmona, M.D.
Gregory W. Chase
Robin A. Goble
Miller, Stratvert & Torgerson, P.A.
P.O. Box 25687
Albuquerque, New Mexico 87125